■ In the Matter of DOHERTY'S NEW DORP TAVERN, Petitioner, v NEW YORK STATE LIQUOR AUTHORITY et al., Respondents. — Proceeding pursuant to CPLR article 78 to review a determination of the respondent State Liquor Authority, dated October 6, 1980, which, after a hearing, found petitioner guilty of violating subdivision 6 of section 106 of the Alcoholic Beverage Control Law and imposed a penalty of a 30-day suspension and a $1,000 bond claim. Petition granted, determination annulled, on the law, with costs, and charge dismissed. The liquor authority sustained the charge against petitioner based on its view that a "bouncer" had struck a patron. The petitioner adduced evidence to show that the patron had swung at the bouncer first, that the bar was crowded and that the person in charge did not know of the incident until it was over. We do not believe that there is substantial evidence in the record to support the conclusion that petitioner had suffered or permitted the licensed premises to become disorderly simply by using force to eject an unruly patron or that the force used was unnecessary (see *Matter of L.B.R. Enterprises v New York State Liq. Auth.*, 53 NY2d 714). Damiani, J.P., Lazer and Mangano, JJ., concur.

Gibbons, J., dissents and votes to confirm the determination of the State Liquor Authority and dismiss the proceeding on the merits, with the following memorandum: I have difficulty in accepting the concept that a "bouncer" has a legal function in a business establishment, inflicting instant justice by the use of violence on the alleged wrongdoer, bypassing the usual agencies of our system of justice. In this case the young patron's nose was broken in four places by the petitioner's enforcer of the rules of decorum, necessitating hospitalization and surgery. The manager and secretary of the licensee corporation was present and tending the nearby main bar in the premises at the time of the alleged altercation, which took place in the vicinity of the smaller bar. It would appear that since the altercation was brought to the attention of the "bouncer", and surely could have also been brought to the attention of the manager who was present in the establishment, I can perceive no reason why the manager, who was acquainted with the patron, could not have been called upon to intercede and arrange for a peaceful exit by the patron and a nonviolent resolution of the problem. The manager of the tavern has testified with respect to the incident, "I saw it", and yet did nothing to prevent it. If he did not see it, considering his proximity and the insults, threats and violence that occurred, he should have seen it, and his failure to do so and to prevent the injury to the patron constituted suffering and permitting the premises to become disorderly. Moreover, the bartender instigated the incident by his insulting remarks concerning the women present, one of whom was related to the injured patron. (See *Matter of Club 95 v New York State Liq. Auth.*, 23 NY2d 784, 785, where it was held "where the licensee's agent is instrumental in creating the disorder, it is generally not necessary to establish a foreseeable pattern of conduct".) Inasmuch as there was no finding that the patron was unruly or that he provoked the incident by throwing the first punch, although there was testimony that someone had swung, the use of force sufficient to break a person's nose in four places would have to be considered "unnecessary force" (see *Matter of L.B.R. Enterprises v New York State Liq. Auth.*, 53 NY2d 714; *Matter of Barchat Tavern v Liquor Auth. of State of N.Y.*, 50 NY2d 1019). There was substantial evidence to justify the liquor authority's determination, and the penalty imposed was not an abuse of discretion.